ORIGINAL

HENDERSON GALLAGHER & KANE
A Law Corporation

J. PATRICK GALLAGHER      3417-0
LEAH M. REYES             7463-0
Topa Financial Center
745 Fort Street, Suite 1550
Honolulu, Hawaii 96813
Tel. No. (808) 531-2023
email: pgallagher@insurlawhawaii.com
email: lreyes@insurlawhawaii.com

Attorneys for Plaintiff
NAUTILUS INSURANCE COMPANY



FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 09 2011

at /0 o'clock and 50 min. A.M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| NAUTILUS INSURANCE COMPANY, | CIVIL NO. CV 11 00303 DAE RLP (Contract) |
| Plaintiff, |  |
| vs. | COMPLAINT FOR DECLARATORY JUDGMENT; EXHIBITS "A" - "E"; SUMMONS |
| 3 BUILDERS, INC. |  |
| Defendant. |  |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff NAUTILUS INSURANCE COMPANY, by and through its attorneys, Henderson Gallagher & Kane, for its complaint for declaratory judgement against defendant above-named, alleges and avers as follows:

### PARTIES

1.     Plaintiff   NAUTILUS   INSURANCE   COMPANY,   (hereinafter "NAUTILUS"), is an Arizona corporation under the laws of the State of Arizona, with its principal place of business in Scottsdale, Arizona.

2.     Upon   information   and   belief,   Defendant   3   BUILDERS,   INC., (hereinafter "3 BUILDERS"), is, and was during all relevant times herein, a Hawaii corporation engaged in business in the State of Hawaii.

3.     Upon information and belief, the ASSOCIATION OF APARTMENT OWNERS OF MILILANI PINNACLE, (hereinafter "PINNACLE"), is, and was during all relevant times herein, an unincorporated association duly organized and existing by virtue of the laws of the State of Hawaii, with its principal place of business located in Mililani, Hawaii.

### JURISDICTION AND VENUE

4.     Jurisdiction exists in the Court pursuant to the provisions of 28 U.S.C. Section 1332 inasmuch as there is diversity of citizenship and the matter in

controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

5.     This is an action for declaratory judgment pursuant to Federal Declaratory Judgment Act, 28 U.S.C. Section 2201, for purposes of determining an actual controversy between the parties.

6.     Venue in this jurisdictional district is proper under 28 U.S.C. Section 1391 (a)(2), because Defendant resides within the District of Hawaii, and all or a substantial part of the events giving rise to the claims at issue in the underlying lawsuit, as described herein, occurred within the District of Hawaii.

## BACKGROUND

7.     Upon information and belief, the matter styled In the Matter of The Arbitration Between Certified Association Services, Inc., dba Certified Construction Management v. Association of Apartment Owners of Mililani Pinnacle, was submitted for binding arbitration to Dispute Prevention and Resolution, State of Hawaii, Arbitration No. 98-0308-A, (hereinafter referred to as the "Underlying Arbitration").

8.     On or about March 19, 2010, PINNACLE submitted its First Amended Counterclaim and Third Party Demand in the Underlying Arbitration.

9.     PINNACLE's Third Party Demand alleges against third-party defendant 3 BUILDERS and others: breach of contract, negligence, and fraud.  A copy of the

3

Association's First Amended Counterclaim and Third Party Demand is attached and made a part hereof as Exhibit "A", (hereinafter referred to as the "Underlying Demand").

10.   The Underlying Demand alleges:

a.   PINNACLE represents the interests of Mililani Pinnacle owners and residents of the 90 townhomes in 14 separate buildings that make up the multi-family unit project located in Mililani Oahu

b.   In 2008, Certified Management, Inc., which was at the time the management company for PINNACLE (and a party related to CERTIFIED [Certified Association Services, Inc. dba Certified Construction Management]), recommended that PINNACLE re-roof the entire project.

c.   PINNACLE entered into a construction contract with 3 BUILDERS pursuant to which 3 BUILDERS was to replace the roofs on each of PINNACLE's buildings.

d.   3 BUILDERS then entered into a subcontract (the "Subcontract") with M&R [M& R Roofing and Raingutters LLC] a roofing contractor to install the new roofs.

e.   After the Respondents [Certified Association Services, Inc., dba Certified Construction Management. Lance Luke, 3 BUILDERS, and M&R Roofing

4

& Raingutters LLC] began work on the roofing project, PINNACLE encountered numerous issues of concern related to the performance by the Repondents of their respective obligations under their respective contracts.

      f.    In February, 2009, PINNACLE became increasingly concerned about all aspects of the roofing project.

      g.    PINNACLE advised the Respondents that it believed that it must terminate the existing Management Agreement and Construction Contract because Respondents were not performing in accordance with the contracts, there was duplication between Certified Association Services, Inc., dba Certified Construction Management and Lance Luke and 3 BUILDERS of management services, there was no bond in place and PINNACLE needed to take steps to either obtain a bond or to waive the bond requirement.

      h.    At the time of the termination of work, the roof on Building 9 had been completed and a portion of the roof on Building 8 was completed.

      i.    After ordering that work be stopped, PINNACLE attempted to determine whether the roofs had been installed appropriately so that the roofing manufacturer Classic Metal Roofing ("CMR") would issue the warranties for the completed roofs.

      j.    CMR conducted an inspection on May 7, 2009.  CMR advised

PINNACLE in August, 2009, that the completed roofs were not installed in accordance with manufacturer specifications and that CMR would not issue the wind warranty for the completed roofs until those roofs were replaced to comply with manufacturer specifications.

      k.    PINNACLE is in the untenable position of having to replace the roofs on Buildings 8 and 9 that had been completed and to finish the project as it deals with unhappy owners and residents and the risk of damage to its buildings.

      11.    In the Underlying Demand, PINNACLE alleges a cause of action for "Breaches of Contract" against 3 BUILDERS, to wit, the Underlying Demand provides in relevant part:

      3 BUILDERS  breached its contractual obligations to PINNACLE by:

      a.    Failing to adequately review specifications and industry standards to confirm the scope of work for the roof project.

      b.    Failing to obtain a building permit before commencing work

      c.    Failing to obtain the required performance and lien bond before work commenced on the project.

      d.    Failing to provide construction services for re-roofing project in accordance with manufacturer's specifications, and in accordance with acceptable industry standards.

e.      Failing to adequately perform and inspect the work that was performed to insure that it was in compliance with manufacturer specifications.

f.      Failing to disclose relationships between CERTIFIED entities and the general contractor 3 BUILDERS which compromised the integrity of the bidding process, the award of the roofing contract and the handling of the project.

12.      In the Underlying Demand, PINNACLE alleges a cause of action for "Negligence and/or Fraud" against 3 BUILDERS, to wit, the Underlying Demand provides in relevant part:

3 BUILDERS engaged in negligent or fraudulent activity by:

a.      Failing to install the roof in accordance with manufacturer's specifications and acceptable construction standards.

b.      Failure to obtain a bond as required.

c.      Failure to obtain a building permit before commencing work.

d.      Failure to properly represent their expertise to install the roofing as required.

e.      Failure to properly inspect the roofs to confirm compliance with manufacturer specifications.

f.      Failure to properly disclose to PINNACLE their relationship with Certified Association Services, Inc., dba Certified Construction Management

("CERTIFIED") and Lance Luke.

13.   PINNACLE further alleges in its Statement of Calculation of Damages

filed in the Underlying Arbitration (attached hereto with its exhibits as Exhibit "B")

that the components of PINNACLE's claims are:

A.   Cost of Roofing Panels installed by 3 BUILDERS and damaged when 3 BUILDERS' work was remediated and redone.

B.   Cost of Roofing Services paid to 3 BUILDERS.

C.   Cost of Replacement Roofing installation by new contractor.

D.   Amounts paid to Co-Defendant CERTIFIED (to supervise 3 BUILDERS' work).

E.   Interest.

F.   Cost of Trinity/ERD Consultant Services (to replace Certified).

G.   Attorney's Fees (to pursue contract claims against 3 BUILDERS and CERTIFIED).

14.   On May 3, 2010, NAUTILUS issued a reservation of rights letter to 3

BUILDERS in which NAUTILUS agreed to defend 3 BUILDERS in the Underlying

Arbitration under a full reservation of rights, including the right to bring an action in

a court of competent jurisdiction and venue in order to obtain a declaration of the

obligations and responsibilities of the parties under the commercial general liability

8

policies of insurance NAUTILUS issued to 3 BUILDERS.

## THE NAUTILUS POLICIES

15.    NAUTILUS issued three commercial general liability policies of insurance to 3 BUILDERS for three consecutive policy periods beginning January 24, 2008 and ending January 24, 2011, (hereinafter referred to collectively as the "Nautilus Policies").

16.    A copy of commercial general liability policy no. NC754585 issued by NAUTILUS to 3 BUILDERS for the policy period beginning January 24, 2008 to January 24, 2009 is attached hereto as Exhibit "C".

17.    A copy of commercial general liability policy no. NC861241 issued by NAUTILUS to 3 BUILDERS for the policy period beginning January 24, 2009 to January 24, 2010 is attached hereto as Exhibit "D".

18.    A copy of commercial general liability policy no. NC974362 issued by NAUTILUS to 3 BUILDERS for the policy period beginning January 24, 2010 to January 24, 2011 is attached hereto as Exhibit "E".

19.    3 BUILDERS is a named insured under the Nautilus Policies.

20.    The Nautilus Policies include *Commercial General Liability Coverage Form* Form CG 00 01 12 04 ("hereinafter referred to as the "Coverage Form").

21.    Bodily Injury and Property Damage liability coverage is provided

according to Coverage Form *SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement,* which states in relevant part:

> 1. *Insuring Agreement*
>    a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.*
>
>    . . .
>
>    b. *This insurance applies to "bodily injury" and "property damage" only if:*
>       (1) *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
>       (2) *The "bodily injury" or "property damage" occurs during the policy period; . . .*

22.   Under the *Insuring Agreement,* the Nautilus Policies afford Bodily Injury and Property Damage Liability Coverage only for damages for which an insured is

legally liable because of "bodily injury" or "property damage" caused by an "occurrence."

23.   *Section V - Definitions* of the Nautilus Policies' Coverage Form, defines "bodily injury", "occurrence" and "property damage" , as follows:

> 3.   *"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*
>
> . . .
>
> 13.   *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*
>
> . . .
>
> 17.   *"Property damage" means:*
> a.   *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
> b.   *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

24.   Under *Section V - Definitions* of the Nautilus Policies' Coverage Form, "your work" means:

> (1)   *Work or operations performed by you or on your behalf; and*

11

> (2)   *Materials, parts or equipment furnished in connection with such work or operations.*

25.   Under *Section V - Definitions* of the Nautilus Policies' Coverage Form, "your work" includes:

> (1)   *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and*
> (2)   *The providing of or failure to provide warnings or instructions.*

26.   Under *Section V - Definitions* of the Nautilus Policies' Coverage Form, it is said:

> *"Your product":*
>
> a.   *Means:*
>
> > (1)   *Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*
> >
> > > (a)   *You;*
> > > (b)   *Others trading under your name; or*
> > > (c)   *A person or organization whose business or assets you have acquired; and*
> >
> > (2)   *Containers (other than vehicles), materials, parts or equipment furnished in connection with such good or products.*

27.   Under *Section V - Definitions* of the Nautilus Policies' Coverage Form,

"your product" includes:

> *(1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*

> *(2)   The providing of or failure to provide warnings or instructions.*

28.   Under *Section V - Definitions* of the Nautilus Policies' Coverage Form, "impaired property" means:

> *tangible property, other than "your product" or "your work" that cannot be used or is less useful because:*

> *a.   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*

> *b.   You have failed to fulfill the terms of a contract or agreement;*

> *if such property can be restored to use by:*

> *a.   The repair, replacement, adjustment or removal of "your product" or "your work"; or*

> *b.   Your fulfilling the terms of the contract or agreement.*

29.   Under *Section V - Definitions* of the Nautilus Policies' Coverage Form, "Products-completed operations hazard":

> *a.   Includes all "bodily injury" and "property damage"*

*occurring away from your premises you own or rent and arising out of "your product" or "your work" except:*

*(1)   Products that are still in your physical possession; or*

*(2)   Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:*

> *(a)   When all of the work called for in your contract has been completed.*

> *(b)   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.*

> *(c)   When that part of work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

> *Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.*

## COUNT I

## CONSTRUCTION DEFECTS CLAIMS DO NOT CONSTITUTE AN

## "OCCURRENCE" UNDER THE NAUTILUS POLICIES

30.     Paragraphs 1 through 29 of this Complaint are realleged as though fully set forth herein.

31.     The Underlying Demand alleges that "the completed roofs were not installed in accordance with manufacturer specifications."

32.     The Underlying Demand alleges that 3 BUILDERS failed "to provide construction services for re-roofing project in accordance with manufacturer's specifications, and in accordance with acceptable industry standards."

33.     The Underlying Demand alleges that 3 BUILDERS failed to "adequately perform and inspect the work that was performed to insure that it was in compliance with manufacturer specifications."

34.     The claims of the Underlying Demand are founded on the allegations that 3 BUILDERS was not performing in accordance with its Construction Contract with PINNACLE.

35.     Under Hawaii law, construction defect claims do not constitute an "occurrence" under commercial general liability polices, and therefore contract and contract-based tort claims arising therefrom are not covered.

36.   The claims against 3 BUILDERS are construction defect claims sounding in contract and/or contract-based tort and therefore are not covered under the Nautilus Policies.

37.   By reason thereof, NAUTILUS is entitled to a declaration from this Court that coverage under the Nautilus Policies is not applicable to the claims asserted against 3 BUILDERS in the Underlying Demand and NAUTILUS therefore does not have a duty to defend or indemnify 3 BUILDERS in the Underlying Arbitration.

## COUNT II

## "EXPECTED OR INTENDED INJURY" EXCLUSION

38.   Paragraphs 1 through 37 of this Complaint are realleged as though fully set forth herein.

39.   The Nautilus Policies' Coverage Form, *Section I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS,* contains an "expected or intended injury" exclusion (Exclusion a.) which states in relevant part:

> *This insurance does not apply to:*
>
> a.    *Expected or Intended Injury*
>
> "Bodily injury" or "property damage" expected or

> *intended from the standpoint of the insured. This*
> *exclusion does not apply to "bodily injury"*
> *resulting from the use of reasonable force to protect*
> *persons or property."*

40.     The claims of the Underlying Demand are founded upon the allegation

that 3 BUILDERS failed to properly perform its Construction Contract with

PINNACLE for the reroofing of all of the PINNACLE buildings.

41.     The Underlying Demand alleges 3 BUILDERS engaged in negligent or

fraudulent activity by its : 1)   Failing to install the roof in accordance with

manufacturer's specifications and acceptable construction standards; 2) Failure to

obtain a bond as required; 3) Failure to obtain a building permit before commencing

work; 4)   Failure to properly represent their expertise to install the roofing as

required; 5)   Failure to properly inspect the roofs to confirm compliance with

manufacturer specifications; and 6) Failing to properly disclose to PINNACLE their

relationship with Certified Association Service, Inc. dba Certified Construction

Management and Lance Luke.

42.     The Underlying Demand alleges deliberate or intentional acts by 3

BUILDERS.

43.     The property damage alleged in the Underlying Demand against 3

BUILDERS constitutes property damage expected or intended from the standpoint

of 3 BUILDERS.

44.     Under the "expected or intended injury" exclusion of the Nautilus

Policies (Exclusion a.), coverage is excluded for the "property damage" claimed by

PINNACLE in the Underlying Demand against 3 BUILDERS.

45.     By reason thereof, NAUTILUS is entitled to a declaration from this

Court that coverage under the Nautilus Policies is not applicable to the claims

asserted against 3 BUILDERS in the Underlying Demand and NAUTILUS therefore

does not have a duty to defend or indemnify 3 BUILDERS in the Underlying

Arbitration.

**COUNT III**

**"CONTRACTUAL LIABILITY" EXCLUSION**

46.     Paragraphs 1 through 45 of this Complaint are realleged as though fully

set forth herein.

47.     The Nautilus Policies' Coverage Form, *Section I - COVERAGES,*

*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2.*

*EXCLUSIONS,* contains a "contractual liability" exclusion (Exclusion b.) which states

in relevant part:

> *This insurance does not apply to:*
>
> b.      *Contractual Liability*

> *"Bodily injury" or "property damage" for
> which the insured is obligated to pay
> damages by reason of the assumption of
> liability in a contract or agreement.*

48.   The Underlying Demand alleges that "PINNACLE entered into a construction contract with 3 BUILDERS pursuant to which 3 BUILDERS was to replace the roofs on each of PINNACLE's buildings."

49.   By the Underlying Demand, PINNACLE seeks to recover damages from 3 BUILDERS by reason of 3 BUILDERS' assumption of liability in its construction contract with PINNACLE.

50.   Under the Contractual Liability exclusion of the Nautilus Policies, (Exclusion b.) coverage is excluded for the "property damage" claimed by PINNACLE in the Underlying Demand against 3 BUILDERS.

51.   By reason thereof, NAUTILUS is entitled to a declaration from this Court that coverage under the Nautilus Policies is not applicable to the claims asserted against 3 BUILDERS in the Underlying Demand and NAUTILUS therefore does not have a duty to defend or indemnify 3 BUILDERS in the Underlying Arbitration.

## COUNT IV

## "DAMAGE TO PROPERTY" EXCLUSIONS

52.     Paragraphs 1 through 51 of this Complaint are realleged as though fully set forth herein.

53.     The Nautilus Policies' Coverage Form, *Section I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS,* contains a "property damage" exclusion  (Exclusions j.(5) and j.(6)) which states in relevant part:

> *This insurance does not apply to:*
>
> j.     *Damage to Property*
>
>     . . .
>
> (5)     *That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*
>
> (6)     *That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

54.     The Underlying Demand alleges that while the re-roofing project was ongoing, "PINNACLE became increasingly concerned about all aspects of the roofing project."

55.     The Underlying Demand alleges that PINNACLE advised 3 BUILDERS that it must terminate the existing Construction Contract because 3 BUILDERS was not performing in accordance with the contract.

56.     The Underlying Demand alleges that "at the time of the termination of work, the roof on Building 9 had been completed and a portion of the roof on Building 8 was completed."

57.     The Underlying Demand alleges that "the completed roofs were not installed in accordance with manufacturer specifications" such that the manufacturer would not issue its "wind warranty for the completed roofs until those roofs were replaced to comply with manufacturer specifications"

58.     The Underlying Demand alleges that "PINNACLE is now in the untenable position of having to replace the roofs on Buildings 8 and 9 [that] had been completed and to finish the project as it deals with unhappy owners and residents and the risk of damage to its buildings."

59.     Under exclusions j.(5) and j.(6), any damage to, or any repair or replacement of the roofs on Buildings 8 and 9 are excluded from coverage under the Nautilus Policies.

60.     By reason thereof, NAUTILUS is entitled to a declaration from this Court that coverage under the Nautilus Policies is not applicable to the claims

asserted against 3 BUILDERS in the Underlying Demand and NAUTILUS therefore does not have a duty to defend or indemnify 3 BUILDERS in the Underlying Arbitration.

## COUNT V

## "DAMAGE TO YOUR WORK" EXCLUSION

61.    Paragraphs 1 through 60 of this Complaint are realleged as though fully set forth herein.

62.    The Nautilus Policies' *DESIGNATED CONSTRUCTION OPERATIONS* exclusion endorsement form L291 (06/07), Paragraph C., replaces *SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, l. Damage to Your Work* with the following:

> *This insurance does not apply to:*
>
> l.    *Damage to Your Work*
>
> > *"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

63.    The Underlying Demand alleges that at the time it terminated its Construction Contract with 3 BUILDERS, "the roof on Building 9 had been completed and a portion of the roof on Building 8 was completed."

64.    The Underlying Demand alleges "that the roofs were not installed in

accordance with manufacturer specifications" and that the manufacturer "would not issue the wind warranty for the completed roofs until those roofs were replaced to comply with the manufacturer specifications."

65.    The Underlying Demand alleges that PINNACLE is in the untenable position of having to replace the roofs on Buildings 8 and 9 that had been completed and to finish the project as it deals with unhappy owners and residents and the risk of damage to its buildings.

66.    The Underlying Demand alleges "property damage" to the work of 3 BUILDERS arising out of it or any part of it. ("Designated Construction Operations" Exclusion Endorsement, form L291 (06/07)).

67.    The Underlying Demand does not allege that said "property damage" occurred on any premises 3 BUILDERS owns or rents. ("Designated Construction Operations" Exclusion Endorsement, form L291 (06/07))

68.    Under    the    "Designated    Construction    Operations"    Exclusion Endorsement contained in the Nautilus Policies, coverage is excluded for "property damage" to 3 BUILDERS' work claimed by PINNACLE in the Underlying Demand against 3 BUILDERS.

69.    By reason thereof, NAUTILUS is entitled to a declaration from this Court that coverage under the Nautilus Policies is not applicable to the claims

asserted against 3 BUILDERS in the Underlying Demand and NAUTILUS therefore does not have a duty to defend or indemnify 3 BUILDERS in the Underlying Arbitration.

## COUNT VI

## "IMPAIRED PROPERTY" EXCLUSION

70.     Paragraphs 1 through 69 of this Complaint are realleged as though fully set forth herein.

71.     The Nautilus Policies' Coverage Form, *Section I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS*, contains an "impaired property" exclusion (Exclusion m.) which states in relevant part:

> *This insurance does not apply to:*
>
> m.   *Damage to Impaired Property or Property Not Physically Injured*
>
> *"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*
>
> (1)   *A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*
>
> (2)   *A delay or failure by you or anyone acting on your behalf to perform a contract or*

*agreement in accordance with its terms.*

72.     The claims of the Underlying Demand are founded on the allegation that 3 BUILDERS was not performing in accordance with its Construction Contract with PINNACLE wherein 3 BUILDERS was to replace the roofs on each of PINNACLE's buildings.

73.     The damages sought by PINNACLE in the Underlying Demand constitutes "property damage" to "impaired property" arising out of a "defect, deficiency or inadequacy" in 3 BUILDERS work or a "delay or failure" by 3 BUILDERS to perform a contract agreement in accordance with its terms.

74.     Under the "impaired property" exclusion of the Nautilus Policies (Exclusion m.), coverage is excluded for the "property damage" claimed by PINNACLE in the Underlying Demand against 3 BUILDERS.

75.     By reason thereof, NAUTILUS is entitled to a declaration from this Court that coverage under the Nautilus Policies is not applicable to the claims asserted against 3 BUILDERS in the Underlying Demand and NAUTILUS therefore does not have a duty to defend or indemnify 3 BUILDERS in the Underlying Arbitration.

## COUNT VII

## "PUNITIVE OR EXEMPLARY DAMAGES" EXCLUSION

76.     Paragraphs 1 through 75 of this Complaint are realleged as though fully set forth herein.

77.     The Nautilus Policies include *PUNITIVE OR EXEMPLARY DAMAGES* exclusion endorsement form L217 (06/07) which states in relevant part:

> *This endorsement modifies insurance provided under the following:*
>
> *COMMERCIAL GENERAL LIABILITY COVERAGE PART*
>
> *The following exclusion is added to 2. Exclusions of Section I:*
>> *This insurance does not apply to punitive or exemplary damages.*

78.     The Underlying Demand alleges 3 BUILDERS engaged in negligent or fraudulent activity by its : 1)   Failing to install the roof in accordance with manufacturer's specifications and acceptable construction standards; 2) Failure to obtain a bond as required; 3)  Failure to obtain a building permit before commencing work;  4)   Failure to properly represent their expertise to install the roofing as required;  5)   Failure to properly inspect the roofs to confirm compliance with manufacturer specifications; and 6) Failing to properly disclose to PINNACLE their relationship with Certified Association Service, Inc. dba Certified Construction

Management and Lance Luke.

79.    By its Underlying Demand, PINNACLE demands 3 BUILDERS "pay punitive damages to PINNACLE as the arbitrator deems appropriate due to [its] negligence, wrongful actions and fraud."

80.    Under the "punitive or exemplary damages" exclusion of the Nautilus Policies, coverage is excluded for punitive or exemplary damages claimed in the Underlying Demand against 3 BUILDERS.

81.    Coverage for the punitive damages alleged in the Underlying Complaint against 3 BUILDERS is barred by statute under HRS §431:10-240.

82.    By reason thereof, NAUTILUS is entitled to a declaration from this Court that coverage under the Nautilus Policies is not applicable to the claims asserted against 3 BUILDERS in the Underlying Demand and NAUTILUS therefore does not have a duty to defend or indemnify 3 BUILDERS in the Underlying Arbitration.

## COUNT VIII

## NO COVERAGE IS AFFORDED FOR "PROPERTY DAMAGE"

## KNOWN PRIOR TO THE POLICY PERIOD

83.    Paragraphs 1 through 82 of this Complaint are realleged as though fully set forth herein.

27

84.     The Nautilus Policies' Coverage Form, *Section I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement*, states in relevant part:

> 1.     *Insuring Agreement*
>
>        . . .
>
>        b.     *This insurance applies to "bodily injury" and "property damage" only if:*
>
>               . . .
>
>               (3)     *Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*
>
>        . . .
>
>        d.     *"Bodily injury" or "property damage" will be deemed to have been known to have*

*occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*

(1)    *Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*

(2)    *Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or*

(3)    *Becomes aware of any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

85.    The Natutilus Policies' Coverage Form *SECTION II - WHO IS AN INSURED*, sets forth who is an insured for 3 BUILDERS, general contractor, in relevant part as follows:

1.    *If you are designated in the Declarations as:*

. . .

d.    *An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also*

*insureds, but only with respect to their
liability as stockholders.*

86.    The Nautilus Policies apply to "property damage" only if, prior to the

policy period, no insured or employee, executive officers and directors of insured

knew that "property damage" had occurred, in whole or in part prior to the policy

period.

87.    NAUTILUS issued to 3 BUILDERS Policy No. NC974362 for the policy

period beginning January 24, 2010 to January 24, 2011.

88.    The Underlying Complaint alleges that "in February, 2009, []

PINNACLE became increasingly concerned about all aspects of the roofing project."

89.    The Underlying Complaint alleges that because 3 BUILDERS and others

"failed to promptly or adequately address PINNACLES's concerns," PINNACLE

requested a meeting with representative of 3 BUILDERS and others "to discuss the

problems."

90.    The Underlying Complaint alleges that during PINNACLE's meeting

with 3 BUILDERS and others, among other things, the "general status of the work"

was discussed, and PINNACLE advised 3 BUILDERS that it believed that it must

terminate the existing Construction Contract with 3 BUILDERS because 3

BUILDERS was not performing in accordance with the Contract.

91.   3 BUILDERS knew that "property damage" had occurred, in whole or in part prior to the January 24, 2010 to January 24, 2011 policy period (Policy No. NC974362).

92.   Under the Nautilus Policies' Coverage Form, *Insuring Agreement*, no coverage is afforded for the allegations of "property damage" in the Underlying Demand against 3 BUILDERS for "property damage" 3 BUILDERS knew, in whole or in part had occurred prior to the policy no. NC974362 policy period.

93.   By reason thereof, NAUTILUS is entitled to a declaration from this Court that coverage under the Nautilus Policies is not applicable to the claims asserted against 3 BUILDERS in the Underlying Demand and NAUTILUS therefore does not have a duty to defend or indemnify 3 BUILDERS in the Underlying Arbitration.

## COUNT IX

## NO INDEMNITY COVERAGE AND NO DUTY TO DEFEND

94.   Paragraphs 1 through 93 of this Complaint are realleged as though fully set forth herein.

95.   3 BUILDERS tendered the defense of the Underlying Demand to NAUTILUS, who is defending 3 BUILDERS pursuant to a Reservation of Rights.

96.   An actual controversy of a justiciable nature exists between NAUTILUS

and 3 BUILDERS wherein NAUTILUS contends that the Nautilus Policies afford no indemnity coverages to 3 BUILDERS for any judgment or award that might be rendered in the Underlying Demand by PINNACLE, Arbitration No. 98-0308-A, and that NAUTILUS has no duty to defend 3 BUILDERS from allegations contained in the Underlying Demand or to pay for costs incurred in the defense of 3 BUILDERS therein.

97.    On the basis of the foregoing, declaratory judgment is necessary and proper to determine the rights, obligations and liabilities, if any which exist to said parties under the Nautilus Policies issued by NAUTILUS to 3 BUILDERS as to the claims set forth in the Underlying Demand.

WHEREFORE , NAUTILUS prays for relief as follows:

A.    For a declaration by this Court that NAUTILUS owes no duty to defend 3 BUILDERS against any claims made by PINNACLE in the Underlying Arbitration, as set forth in the Underlying Demand, Dispute Prevention and Resolution, State of Hawaii, Arbitration No. 98-0308-A.

B.    For a declaration by this Court that NAUTILUS owes no duty to indemnify 3 BUILDERS against any claims made by PINNACLE in the Underlying Arbitration, as set forth in the Underlying Demand, Dispute Prevention and Resolution, State of Hawaii, Arbitration No. 98-0308-A.

C.     For a declaration by this Court that NAUTILUS has no duty to otherwise provide any insurance coverage to 3 BUILDERS under the Nautilus Policies for any claims, injuries, and/or damages alleged or awarded in the Underlying Demand, and Underlying Arbitration.

D.     That alternatively, a declaration by this Court be issued in favor of NAUTILUS that there is no coverage under the Nautilus Policies for some of the claims, injuries, and/or damages asserted in the Underlying Demand and Underlying Arbitration and NAUTILUS therefore does not have a duty to indemnify 3 BUILDERS as to those claims or damages.

E.     That NAUTILUS be entitled to recovery from 3 BUILDERS some or all of the costs expended in having to bring this action.

F.     That NAUTILUS be entitled to such other and further relief as this Court deems just and proper under the circumstances of this case.

DATED:     Honolulu, Hawaii,   _____MAY - 9 2011_____.

_____

J. PATRICK GALLAGHER
LEAH M. REYES

Attorneys for Plaintiff
NAUTILUS INSURANCE COMPANY