IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

NAUTILUS INSURANCE COMPANY,  )   CIVIL NO. 11-00303 LEK-RLP
                          )
        Plaintiff,   )
                          )
    vs.              )
                          )
3 BUILDERS, INC.,       )
                          )
        Defendant.   )
_____ )
3 BUILDERS, INC.,       )
                          )
        Counterclaimant, )
                          )
    vs.              )
                          )
NAUTILUS INSURANCE COMPANY,  )
                          )
        Counterclaim    )
        Defendant.   )
_____ )

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      Before the Court is Plaintiff/Counter Defendant Nautilus Insurance Company's ("Nautilus") Motion for Summary Judgment ("Motion"), filed on November 12, 2012. [Dkt. no. 42.] Defendant/Counter Claimant 3 Builders, Inc. ("3 Builders") filed its memorandum in opposition on April 29, 2013, and Nautilus filed its reply on May 3, 2013. [Dkt. nos. 59, 60.] This matter came on for hearing on May 20, 2013. Appearing on behalf of Nautilus was Leah Reyes, Esq., and appearing on behalf of 3 Builders was Paul Herran, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments

of counsel, Nautilus's Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

Nautilus filed its Complaint for Declaratory Judgment on May 9, 2011.  Nautilus filed its First Amended Complaint for Declaratory Judgment ("First Amended Complaint") on September 25, 2012.  [Dkt. no. 37.]  Nautilus seeks a judicial determination that it has no duty to defend or indemnify 3 Builders either in Association of Apartment Owners of Mililani Pinnacle v. Certified Ass'n Services, Inc., Civil No. 11-1-2736-11 KKS, Circuit Court of the First Circuit, State of Hawai`i ("Underlying Action"), or in an arbitration proceeding before Dispute Prevention & Resolution titled The Matter of Arbitration Between Certified Ass'n Service, Inc. v. Association of Apartment Owners of Mililani Pinnacle, Arbitration No. 98-0308-A ("Underlying Arbitration", both collectively "Underlying Proceedings").[1]

3 Builders filed its answer to the original complaint, with a counterclaim, on November 9, 2011.  [Dkt. no. 11.] 3 Builders filed its answer to the First Amended Complaint ("First Amended Answer"), which included the First Amended Counterclaim for Declaratory Judgment ("First Amended Counterclaim").  [Dkt. no. 39.]  In the First Amended

---

[1] Nautilus asserts diversity jurisdiction because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship.  [First Amended Complaint at ¶¶ 1-4.]

Counterclaim, 3 Builders seeks: a declaratory judgment that Nautilus has a duty to defend and a duty to indemnify 3 Builders in the Underlying Proceedings; attorneys' fees and costs pursuant to Haw. Rev. Stat. § 431:10-242 and any other applicable authority; and any other appropriate relief. [First Amended Counterclaim at pgs. 4-5.]

## I.   Factual Background

Nautilus issued three commercial general liability ("CGL") insurance policies, policy numbers NC754585, NC861241, and NC974362, to 3 Builders that were in effect from January 24, 2008 through January 24, 2011 (collectively "the Policies"). [Nautilus's Separate Concise Statement of Facts in Supp. of Motion ("Nautilus CSOF") at ¶ 18 (citing First Amended Complaint, Exhs. D-F).[2]]

### A.   Underlying Action

3 Builders is named as one of the defendants in the Underlying Action. [Nautilus CSOF at ¶ 2.] The complaint in the Underlying Action ("Pinnacle Complaint"[3]) alleges that, in 2008,

---

[2] As discussed, *infra* Discussion section I., 3 Builders did not file a concise statement of facts. In its First Amended Answer, 3 Builders admitted that copies of the Policies are attached to the First Amended Complaint as Exhibits D, E, and F. [First Amended Answer at ¶ 5.]

[3] The Pinnacle Complaint is attached to Nautilus's CSOF as Exhibit 2 to the Declaration of Leah M. Reyes ("Reyes Declaration"). Nautilus previously attached the Pinnacle Complaint to the First Amended Complaint in this action as

(continued...)

Certified Management, Inc. ("Certified"), the management company for the Association of Apartment Owners of Mililani Pinnacle ("Pinnacle"), recommended that Pinnacle re-roof all of its buildings ("the Project").  Pinnacle and Certified entered into contracts for Certified to provide construction management services for the Project.  [Pinnacle Complaint at ¶¶ 6-13.] Lance Luke, Certified's president, recommended that Pinnacle select 3 Builders as the contractor for the Project.  Luke cited 3 Builders' experience, and the fact that 3 Builders had the best price offer.  The Pinnacle Complaint, however, alleges that Luke failed to disclose to Pinnacle that Certified and 3 Builders had a close relationship and had worked together on a number of previous projects.  In reliance on Luke's and Certified's representations, Pinnacle agreed to have Certified enter into a contract with 3 Builders, and Pinnacle entered into a Construction Contract with 3 Builders.[4]  The Construction Contract called for 3 Builders to replace each of the Pinnacle building roofs with a metal roofing system manufactured by Classic Metal Roofing ("CMR").  The contract price was

_____

[3](...continued)
Exhibit C.  [First Amended Complaint at ¶ 16; First Amended Answer at ¶ 5 (admitting that the Pinnacle Complaint is attached to First Amended Complaint as Exhibit C).]  Exhibit C to the First Amended Complaint, however, does not include the exhibits to the Pinnacle Complaint.

[4] The Construction Contract is attached to the Pinnacle Complaint as Exhibit C.

4

$1,505,182.60.  Certified, Luke, and 3 Builders did not disclose to Pinnacle that neither 3 Builders nor 3 Builders' subcontractor, M&R, had installed a CMR roof before the Project.  They also failed to provide Pinnacle with a copy of the subcontract.  [Id. at ¶¶ 3, 14-25.]

Pinnacle experienced numerous problems with the performance of Certified, Luke, 3 Builders, and M&R (collectively, "the Contractors").  Pinnacle requested a meeting with the Contractors because it was concerned about the Contractors' failure to address these problems.  They discussed, inter alia, the failure the secure a bond, the failure to disclose certain information, duplication of work, and the status of the Project.  Pinnacle ultimately terminated its agreement with Certified and halted work on the Project because of these problems.  At the time of the termination, the roof on Building 9 and a portion of the roof on Building 8 had been completed.  Pinnacle paid 3 Builders $247,611.55 for the work that 3 Builders and/or M&R had done.  At the time of the termination, Pinnacle was not aware of any substantive defects in the roofs.  Certified demanded more money for the work, but Pinnacle refused.  [Id. at ¶¶ 26-35.]  Certified filed an arbitration demand seeking the amount it alleged that Pinnacle owed it pursuant to their agreements.  [Id. at ¶ 37.]

On May 7, 2009, CMR inspected the roofing work that the Contractors had completed, and in August 2009, CMR provided Pinnacle with a report stating that the completed roofs were not properly installed.  Pinnacle was concerned that CMR would not issue warranties for the roofs that the Contractors installed. Pinnacle notified the Contractors of the report and retained Trinity, ERD ("Trinity") as a consultant to examine the roof work and assess the situation.  Trinity determined there were numerous defects in the construction and issued a report in November 2010 stating that the only viable alternative was to replace the roofs on Buildings 8 and 9.[5]  The Contractors did not offer to replace the roofs, nor did they offer any other remedy.  Pinnacle therefore hired Aluminum Shake Roofing, Inc. ("ASRI") to replace the roofs that the Contractors installed.  [Id. at ¶¶ 36, 38, 40-41, 43-44, 47.]  As of June 2010, Pinnacle had paid $247,611.55 to 3 Builders for the original, allegedly faulty, installation, and $231,222.92 to ASRI for the remediation work.  [Id. at ¶¶ 53-54.]

The Pinnacle Complaint alleges the following claims: breach of contract against Luke and Certified; breach of contract

---

[5] Although the Pinnacle Complaint states that the date of Trinity's report was "November 31, 2010," this appears to be a typographical error which should state November 30, 2009. [Pinnacle Complaint at ¶ 44.]  Even if the date of Trinity's report is in fact in November 2010, this does not affect either this Court's analysis or this Court's ruling on the Motion.

against 3 Builders; breach of the duty of good faith and fair dealing by the Contractors; negligent and intentional misrepresentation, negligent and intentional nondisclosure, and fraudulent inducement against the Contractors; quantum meruit and unjust enrichment against the Contractors; negligence against Luke and Certified; negligence against 3 Builders and M&R; fraud by the Contractors; unfair and deceptive business practices ("UDAP") against Luke and Certified; and UDAP against 3 Builders and M&R.  The Pinnacle Complaint prays for the following relief: compensatory, special, consequential, and punitive damages; treble damages pursuant to Haw. Rev. Stat. § 480-13(1); prejudgment and post-judgment interest; attorneys' fees and costs; and any other appropriate relief.

3 Builders tendered the defense in the Underlying Action, as well as in and the Underlying Arbitration, to Nautilus.  Nautilus accepted the tender and has been providing 3 Builders with a defense for approximately three years.  [Mem. in Opp., Decl. of Nick Denzer ("Denzer Decl.") at ¶¶ 29-33.]

**B.    Underlying Arbitration**

On March 19, 2010, in the Underlying Arbitration, Pinnacle filed a First Amended Counterclaim and Third Party Demand against 3 Builders ("Arbitration Counterclaim"). [Nautilus CSOF at ¶ 1; Reyes Decl., Exh. 1 (Arbitration Counterclaim).]  The Underlying Arbitration also addresses the

7

dispute regarding the Project.

The Arbitration Counterclaim alleges the following claims against the Contractors: breach of contract, breach of fiduciary duties, negligence, and fraud.  The Arbitration Counterclaim prays for the following relief: repayment of the amounts Pinnacle paid to the Contractors; reimbursement of the costs to re-roof Buildings 8 and 9 to the extent necessary for Pinnacle to receive the warranty from CMR; award of the costs incurred to remedy leaks or other claims by Pinnacle owners which resulted from the delay in completing the roofs on Buildings 8 and 9; consequential and punitive damages; interest; attorneys' fees; and any other appropriate relief.

C.   **Relevant Provisions of the Policies**

The insuring language in each of the Policies is contained in Commercial General Liability Coverage Form CG 00 01 12 04, which states, in pertinent part:

1.   Insuring Agreement

   a.   We will pay those sums that the insured
        becomes legally obligated to pay as
        damages because of "bodily injury" or
        "property damage" to which this
        insurance applies.  We will have the
        right and duty to defend the insured
        against any "suit" seeking those
        damages.  However, we will have no duty
        to defend the insured against any "suit"
        seeking damages for "bodily injury" or
        "property damage" to which this
        insurance does not apply. . . .

        . . . .

8

b.   This insurance applies to "bodily injury" and "property damage" only if:

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)   The "bodily injury" or "property damage" occurs during the policy period; and

(3)   Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when

9

any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

[Reyes Decl., Exh. 4 at 1.[6]]

The Policies include the following relevant definitions:

**SECTION V – DEFINITIONS**

. . . .

3.     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . . .

8.     "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

―――――――――――

[6] Exhibit 4 consists of excerpts of Coverage Form CG 00 01 12 04 taken from Exhibits D, E, and F to the First Amended Complaint.  [Reyes Decl. at ¶ 6.]  3 Builders did not contest the accuracy of these excerpts.

    a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.    Your fulfilling the terms of the contract or agreement.

. . . .

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . .

16.    "Products-completed operations hazard":

    a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            (a)    When all of the work called for in your contract has been completed.

            (b)    When all of the work to be done at the job site has been

completed if your contract
calls for work at more than
one job site.

(c)  When that part of the work
done at a job site has been
put to its intended use by any
person or organization other
than another contractor or
subcontractor working on the
same project.

Work that may need service,
maintenance, correction, repair or
replacement, but which is otherwise
complete, will be treated as
completed.

.  .  .  .

17.  "Property damage" means:

a.  Physical injury to tangible property,
including all resulting loss of use of
that property.  All such loss of use
shall be deemed to occur at the time of
the physical injury that caused it; or

b.  Loss of use of tangible property that is
not physically injured.  All such loss
of use shall be deemed to occur at the
time of the "occurrence" that caused it.

.  .  .  .

.  .  .  .

21.  "Your product":

a.  Means:

(1)  Any goods or products, other than
real property, manufactured, sold,
handled, distributed or disposed of
by:

(a)  You;

                (b)   Others trading under your
                      name; or

                (c)   A person or organization whose
                      business or assets you have
                      acquired; and

          (2)   Containers (other than vehicles),
                materials, parts or equipment
                furnished in connection with such
                good or products.

     b.   Includes

          (1)   Warranties or representations made
                at any time with respect to the
                fitness, quality, durability,
                performance or use of "your
                product"; and

          (2)   The providing of or failure to
                provide warnings or instructions.

     .  .  .  .

22.  "Your work":

     a.   Means:

          (1)   Work or operations performed by you
                or on your behalf; and

          (2)   Materials, parts or equipment
                furnished in connection with such
                work or operations.

     b.   Includes:

          (1)   Warranties or representations made
                at any time with respect to the
                fitness, quality, durability,
                performance or use of "your work",
                and

          (2)   The providing of or failure to
                provide warnings or instructions.

[Id. at 12-15.]

## II.  **Motion**

In the instant Motion, Nautilus argues that it does not have a duty to defend or a duty to indemnity 3 Builders in the Underlying Proceedings because the claims in the Underlying Proceedings were not caused by an "accident" and therefore do not result from an "occurrence".  [Mem. in Supp. of Motion at 21-22.] Nautilus argues that the construction defects that Pinnacle alleges against 3 Builders are claims for deficient work under the Construction Contract, and both the Hawai`i appellate courts and the Ninth Circuit have previously held that a claim arising from a breach of contract does not involve an accident or an occurrence.  [Id. at 23-26.]  In particular, Nautilus points to this Court's decision in Evanston Insurance Co. v. Nagano, 891 F. Supp. 2d 1179, 1193 (D. Hawai`i 2012), and this Court's interpretation in Evanston of Group Builders, Inc. v. Admiral Insurance Co., 123 Hawai`i 142, 231 P.3d 67 (Ct. App. 2010). Pursuant to Evanston, Nautilus argues that, based on the state of Hawai`i law at the time Nautilus issued the first of the Policies, there is no coverage for the claims alleged in the Underlying Proceedings because all of the claims arise from the contractual relationship to perform the roof work, and a breach of contract is not the type of fortuitous event covered by a CGL policy.  In other words, Nautilus argues that it was reasonably foreseeable that a breach of contract would occur, giving rise to

14

claims such as those alleged in the Underlying Proceedings.  [Id. at 26-28.]

Nautilus emphasizes that a court does not determine whether coverage exists based upon the insured's artful pleadings.  Although the Underlying Proceedings allege negligence, the negligence described in the pleadings is merely the manner in which 3 Builders breached its contract.  The pleadings do not allege a separate, independent cause of action that would trigger the duty to defend.  [Id. at 28-29.]

Nautilus also points out that the Policies expressly exclude coverage for "damage to your work", and Nautilus argues that this exclusion applies,[7] even apart from the Group Builders analysis.  According to Nautilus, the only other damage that Pinnacle alleges in the Underlying Proceedings is economic loss,

---

[7] The Exclusion - Designated Construction Operations endorsement reads, in pertinent part:

> C.   Exclusion **I. Damage to Your Work** of **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:
>
> This insurance does not apply to:
>
> **I.   Damage To Your Work**
>
> > "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

[Reyes Decl., Exh. 5 at 1 (emphases in original).]

15

which is not covered because it does not constitute property damage.  [Id. at 29-32.]

In addition, Nautilus argues that the "contractual liability" exclusion endorsement precludes coverage.[8]  All of Pinnacle's claims against 3 Builders arise from alleged breaches of either their contract or duties arising solely out of their contract.  The contractual liability exclusion expressly precludes coverage where the insured has made a contractual assumption of liability.  [Id. at 33-35.]

---

[8] The Exclusion - Designated Construction Operations endorsement reads, in pertinent part:

> B.   With regard to paragraph A. above, exclusion **b. Contractual Liability of 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:
>
> This insurance does not apply to:
>
> **b.   Contractual**
>
> > (1)  "Bodily injury", "property damage", "personal and advertising injury", and medical payments for which any insured may be obligated to pay damages by reason of the assumption of liability in any contract or agreement, regardless of whether such contract or agreement is an "insured contract"; or
> >
> > (2)  Any obligation to share damages with or repay someone else who must pay damages.

[Reyes Decl., Exh. 5 at 1 (emphases in original).]

Nautilus also relies on the "damage to property" exclusion, which excludes coverage for property damage to real property that the insured, the insured's contractors, or the insured's subcontractors, worked on if the property damage resulted from their operations.  Nautilus contends that this exclusion applies because Pinnacle's alleged damages arise solely from the allegedly defective work on the roofs.  Another exclusion applies to restoration, repair, or replacement work that is necessary because the work was incorrectly performed.[9]

---

[9] The Exclusions section of the Polices state:

This insurance does not apply to:

. . . .

j.   **Damage To Property**

"Property damage" to:

. . . .

(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . . .

Paragraph(6) of this exclusion does not apply to "property damage" included in the
(continued...)

[<u>Id.</u> at 35-36.]

Next, Nautilus cites the "impaired property" exclusion, which excludes coverage for claims for impairment to 3 Builders' work.[10]  Nautilus argues that there is no injury to Pinnacle's property because Pinnacle's damages can be remedied by merely removing and replacing 3 Builders' work.  [<u>Id.</u> at 37-38.]

Nautilus also cites to the "expected or intended injury" exclusion, which covers all intentional conduct.[11]

_____

[9](...continued)
          "products-completed operations hazard."
[Reyes Decl., Exh. 4 at 2, 4-5 (emphasis in original).]

[10] The exclusion states:

      m.   **Damage To Impaired Property Or Property Not Physically Injured**

         "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

         (1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

         (2)   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

         . . . .

[Reyes Decl., Exh. 4 at 5 (emphasis in original).]

[11] The exclusion states:

         This insurance does not apply to:

                                (continued...)

Nautilus argues that the Underlying Proceedings allege deliberate and/or intentional acts by 3 Builders and that any loss therefrom either was intended or should have been expected.  Thus, the expected or intended injury exclusion precludes coverage in this case.  [Id. at 38-40.]

Further, Haw. Rev. Stat. § 431:10-240 provides that insurance policies must be construed to exclude coverage for punitive or exemplary damages unless they are specifically included.  The Policies do not have such a specific inclusion.  In fact, there is an express Punitive or Exemplary Damages Exclusion Endorsement, and therefore the claims for punitive damages in the Underlying Proceedings are not covered.  [Id. at 40 (citing Reyes Decl., Exh. 6).]

Finally, Nautilus argues that there is no coverage under Policy number NC974362, which has a policy period from January 24, 2010 to January 24, 2011.  The policy only covers property damage if, prior to the policy period, no insured, or insured's employee, officer, or director knew that the damage had occurred, in whole or in part.  According to the allegations in

---

[11](...continued)
>          a.   **Expected Or Intended Injury**
>
>               "Bodily injury" or "property damage" expected
>               or intended from the standpoint of the
>               insured. . . .

[Reyes Decl., Exh. 4 at 2 (emphasis in original).]

the Underlying Actions, 3 Builders knew of the alleged property damage at least as early as August 2009.  Thus, there is no coverage under Policy number NC974362.  [Id. at 40-42.]

Nautilus therefore urges the Court to grant summary judgment in Nautilus's favor as to its First Amended Complaint and as to 3 Builders' First Amended Counterclaim.

A.   **3 Builders' Memorandum in Opposition**

In its memorandum in opposition, 3 Builders argues that Nautilus owes it a duty to defend in the Underlying Proceedings because: the allegations in the Underlying Proceedings assert claims for property damage caused by an occurrence; no exclusion applies; there is evidence of property damage; and the Underlying Proceedings allege independent claims for negligence based a standard of care that applies to contractors.  [Mem. in Opp. at 2-3.]

3 Builders points out that, after it entered into the contracts for the Project, Luke and Pinnacle notified 3 Builders of additional requirements that were not in the contract. 3 Builders states that these requirements are typically performed by other persons, such as an architect.  3 Builders began construction on the Project in spite of these additional requirements.  3 Builders acknowledges that a dispute arose between Pinnacle and 3 Builders and that CMR informed Pinnacle that it may not honor the roofs' wind warranties unless CMR's

concerns were addressed.  Pinnacle claimed that there was damage
to the roofs and wanted to stop the Project.  3 Builders asserts
that there was nothing wrong with the roof work done to that
point and that the roofs had been properly installed.  According
to 3 Builders, Pinnacle unilaterally decided to have 3 Builders'
work torn off and to have ASRI install replacement roof.  ASRI
was one of the previously unsuccessful bidders on the Project.
3 Builders informed Pinnacle that it believed removal of its
roofing work was unnecessary.  3 Builders claims that Fred Rehm
of ASRI, along with CMR, sabotaged the Project so that Pinnacle
would give the Project to ASRI.  [Id. at 6-7 (citing Denzer
Decl.; Decl. of Lance Luke ("Luke Decl.")).]

        3 Builders argues that Nautilus improperly focuses on
the lack of a duty to indemnify and on the language in the
Policies.  3 Builders argues that the Court must also look to the
pleadings to determine whether the claims fall within the
Policies' coverage.  3 Builders emphasizes that the duty to
defend is separate and distinct from the duty indemnify and that
the duty to defend is broader, arising whenever there is even a
remote possibility for coverage.  A court determines whether
there was a possibility of coverage based on the information
available to the insurer when it denied coverage.  [Id. at 9-11.]

        Next, 3 Builders argues that the Pinnacle Complaint
alleges that 3 Builders violated acceptable industry standards

and that 3 Builders failed to comply with the manufacturer's specifications.  3 Builders asserts that these negligence claims are distinct from the breach of contract claims.  3 Builders denies that Pinnacle engaged in artful pleading to try to influence the availability of insurance coverage.  [Id. at 12-14.]  3 Builders also argues that the negligent misrepresentation claim, which is based upon, *inter alia*, 3 Builders' representations about its qualifications for the Project, is also a negligence claim separate and distinct from the contract claims.  3 Builders asserts that the alleged negligent misrepresentations that 3 Builders made to Pinnacle are accidents, as defined in Hawai`i case law, and that these accidents led to the hiring of 3 Builders, the installation of the roofs, and the alleged damage to the roofs.  3 Builders, however, emphasizes that its position is that it had the necessary expertise to complete the Project.  [Id. at 14-17.]

As to Nautilus' argument based on Group Builders, 3 Builders argues that, even under that line of cases, the violation of an independent standard of care is still considered an occurrence.  [Id. at 18-19.]  Further, 3 Builders points out that, in a recent decision, the Intermediate Court of Appeals of Hawai`i ("ICA") held that the insurer owed a duty to defend because, at the time the insurer refused the defense, there was a split of authority on the issue of whether construction defect

22

claims meet the definition of an occurrence under a CGL policy. [Id. at 19-20 (citing Group Builders, Inc. v. Admiral Ins. Co., No. 29729, 2013 WL 1579600, at *10 (Hawai`i Ct. App. Apr. 15, 2013)).[12]]  3 Builders argues that, pursuant to Group Builders (2013), Nautilus must provide a defense because, at the time 3 Builders tendered the defense and Nautilus accepted, there was a split of authority on the issue of whether construction defect claims are covered in a CGL policy, and that uncertainty must be resolved in favor of 3 Builders, the insured.  [Id. at 20-21.]

3 Builders points to Pinnacle's request for reimbursement for leaks, and other claims by Pinnacle owners resulting from the delay in completing the roof work on Buildings 8 and 9 as asserting property damage within the Policies' definition.  3 Builders also argues that this request renders the "damage to your work" exclusion inapplicable.  [Id. at 21-22.]

3 Builders contends that the contractual liability exclusion does not preclude coverage because of the negligence claims asserting that 3 Builders breached a standard of care that is separate and distinct from its contractual obligations.  [Id. at 22-23.]

---

[12] This Court will refer to the ICA's April 15, 2013 opinion in Group Builders, Inc. v. Admiral Insurance Co. as "Group Builders (2013)".

3 Builders therefore urges this Court to deny the Motion.

**B.    <u>Nautilus's Reply</u>**

In its reply, Nautilus first argues that this Court should deem the facts set forth in the Nautilus CSOF admitted for purposes of the instant Motion because 3 Builders failed to file a concise statement of fact. [Reply at 3.]

Nautilus argues that 3 Builders argues only that the allegations of "breach of acceptable industry standards" and negligent misrepresentation are covered under the Policies. Nautilus argues that it is entitled to summary judgment as to all of the other claims in the Underlying Proceedings. [<u>Id.</u> at 3-4.] According to Nautilus, 3 Builders argues that the only alleged types of property damage in the Underlying Proceedings are the leaks and other claims by Pinnacle owners arising from the delay in completing the roofs on Buildings 8 and 9. Nautilus therefore asserts that it is entitled to summary judgment as to all of the other types of damages alleged in the Underlying Proceedings. Nautilus also points out that 3 Builders did not contest the lack of coverage for punitive damages or the lack of coverage under Policy number NC974362. Nautilus asserts that it is entitled to summary judgment as to these issues. [<u>Id.</u> at 5-6.]

Nautilus acknowledges that there is a duty to defend where there is any potential for coverage, but Nautilus

24

emphasizes that there is no duty to defend where there is no potential for indemnification, and there is no duty to defend where the pleadings do not allege any basis for recovery. Nautilus also asserts that a court's ultimate determination of no duty to indemnify is only irrelevant to the duty to defend analysis if the insurer has denied a defense.  In contrast, Nautilus has been defending 3 Builders in the Underlying Proceedings for almost three years.  Nautilus urges this Court to find that there is no possibility of indemnification and therefore there is no duty to defend.  [Id. at 6-8.]

    As to 3 Builders' argument that the Underlying Proceedings allege independent claims for a breach of industry standards, Nautilus responds that this alleged breach arises in the context of the breach of contract claims, and any attempt to distinguish between the two types of claims is merely artful pleading.  Further, Nautilus emphasizes that Hawai`i law does not recognize a cause of action for breach of industry standards, and the "economic loss" doctrine bars tort recovery for purely economic losses, except in certain specific types of cases such as violation of a building code.  [Id. at 9-11.]  In fact, the Hawai`i Supreme Court has expressly declined to recognize a cause of action for breach of industry standards.  [Id. at 11 (citing Leis Family Ltd. P'shp v. Silversword Eng'g, 126 Hawai`i 532, 273 P.3d 1218 (2012)).]  Nautilus also reiterates that, if 3 Builders

25

failed to perform its work according to industry standards, legal claims for breach of those standards would be a foreseeable result which is not covered under the Policies.  [Id. at 12.]

As to 3 Builders' arguments regarding the negligent misrepresentation claims, Nautilus reiterates that those claims arise out of the Construction Contract.  In addition, claims based on those representations are not covered because they arise from intentional conduct.  [Id. at 12-13.]

As to Group Builders (2013), Nautilus argues that the case is neither binding precedent nor the law of the case. Further, the "split of authority" referenced in that case does not support 3 Builders' position.  Moreover, Haw. Rev. Stat. § 431:1-217 states that, in construction liability cases, the meaning of the term occurrence is determined based upon the law as it existed at the time the policy in question was issued. Thus, neither Group Builders nor Group Builders (2013) applies, and Nautilus argues that the law at the time it issued the Policies clearly precludes coverage of the claims in the Underlying Proceedings.  [Id. at 14-15.]

As to the argument that Pinnacle's claims based on leaks and other owner claims establish property damage, Nautilus asserts that Pinnacle has abandoned these claims.  What Pinnacle seeks to recover is the cost of 3 Builders' work and the costs to remediate that work.  [Id. at 15-16 (citing Reyes Decl., Exh. 3

26

(Pinnacle's Statement of Damages, filed in the Underlying Arbitration)).]

Nautilus reiterates that, even apart from the occurrence and Group Builders arguments, the traditional "business risk" exclusions, as discussed in the Motion, preclude coverage in this case. [Id. at 17-22.] Nautilus therefore urges the Court to grant summary judgment in its favor as to both the First Amended Complaint and 3 Builders' First Amended Counterclaim.

## DISCUSSION

### I. Failure to File Concise Statement of Facts

3 Builders did not file a concise statement of facts. Instead, 3 Builders submitted three declarations and seven exhibits attached to its memorandum in opposition. Local Rule 56.1 provides, in pertinent part:

> **(g) Admission of Material Facts.** For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.

> **(h) Affidavits and declarations.** Affidavits or declarations setting forth facts and/or authenticating exhibits, as well as exhibits themselves, shall only be attached to the concise statement. Supplemental affidavits and declarations may only be submitted with leave of court.

Pursuant to Local Rule 56.1(g), this Court DEEMS the material statements of fact set forth in the Nautilus CSOF to be ADMITTED because 3 Builders failed to file its own statement of facts controverting the Nautilus CSOF.  Further, 3 Builders neither submitted its declarations and exhibits attached to a concise statement nor sought leave to submit the declarations and exhibits without a concise statement.  This Court therefore will not consider 3 Builders' declarations and exhibits.[13]  This Court now turns to the merits of the Motion.

## II.  Applicable Law Regarding Insurance Contract Interpretation

Federal jurisdiction in this case is based on diversity.  [First Amended Complaint at ¶ 4.]  This Court has recognized that:

> Federal courts sitting in diversity apply state substantive law and federal procedural law. See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."); Zamani v. Carnes, 491 F.3d 990, 995 (9th Cir. 2007) ("Federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." (quotations omitted)).  When interpreting state law, a federal court is bound by the decisions of a state's highest court. Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011).  In the absence of a governing state decision, a

_____

[13] This Court, however, notes that, even if it had considered 3 Builders' exhibits and declarations, they would not change either this Court's analysis or this Court's ruling on the Motion.

28

> federal court attempts to predict how the highest
> state court would decide the issue, using
> intermediate appellate court decisions, decisions
> from other jurisdictions, statutes, treatises, and
> restatements as guidance.  Id.; see also
> Burlington Ins. Co. v. Oceanic Design & Constr.,
> Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the
> extent this case raises issues of first
> impression, our court, sitting in diversity, must
> use its best judgment to predict how the Hawaii
> Supreme Court would decide the issue." (quotation
> and brackets omitted)).

Tracy v. USAA Cas. Ins. Co., Civil No. 11-00487 LEK-KSC, 2012 WL

928186, at *6 (D. Hawai`i Mar. 16, 2012) (some citations

omitted).  This Court therefore looks to Hawai`i state law for

the applicable principles of insurance contract interpretation.

        This Court has summarized the relevant principles of

Hawai`i insurance law, including the duty to defend and the duty

to indemnify, in Evanston Insurance Co. v. Nagano, 891 F. Supp.

2d 1179, 1190-91 (D. Hawai`i 2012).  This Court incorporates that

discussion by reference.

## III. **Whether Coverage is Available Under Policy Number NC974362**

        The policy period for Policy number NC974362 was

January 24, 2010 to January 24, 2011.  [First Amended Complaint,

Exh. F (part 1) at 2.[14]]  As noted, *supra*, section 1.b. of the

coverage provisions in the Policies requires that: the alleged

property damage occurred in the policy territory during the

---

[14] The policy consists of multiple documents, and the policy
as a whole is not consecutively paginated.  This Court's page
citations refer to the page numbers of the exhibit in the CM/ECF
system.

policy period; and no insured, included specified employees of
the insured, knew that the property damage "had occurred, in
whole or in part." [Id. at 10; Reyes Decl., Exh. 4 at 1.]

The Pinnacle Complaint alleges that Pinnacle ordered
the Contractors to stop work on the Project in February 2009.
[Pinnacle Complaint at ¶ 33.]  In August 2009, CMR provided
Pinnacle with a report opining that the Contractors had not
installed the completed roofs according to the manufacturer's
specifications.  Pinnacle notified the Contractors about CMR's
findings and filed its original counterclaim against Certified in
the Underlying Arbitration.  [Id. at ¶¶ 38, 40.]  In a letter
dated October 28, 2009, Pinnacle wrote to the Contractors, and/or
their known counsel, to determine if they would agree to
3 Builders' and Luke's participation in the Underlying
Arbitration.  [Id. at ¶ 42.]

This Court therefore FINDS that 3 Builders was aware of
the alleged property damage at issue in the Underlying
Proceedings prior to the policy period for Policy number
NC974362.  Thus, the alleged property damage at issue in the
Underlying Proceedings does not constitute "property damage"
covered by Policy number NC974362, and this Court CONCLUDES that
Policy number NC974362 does not provide coverage.  This Court
GRANTS summary judgment in favor of Nautilus as to both the First
Amended Complaint and the First Amended Counterclaim on the issue

30

of whether Policy number NC974362 provides coverage for the claims in the Underlying Proceedings.  This Court will hereafter use the phrase "the Applicable Policies" to refer to Policy number NC754585 and Policy number NC861241, collectively.

**IV.  Coverage for Punitive Damages**

Haw. Rev. Stat. § 431:10-240 states: "Coverage under any policy of insurance issued in this State shall not be construed to provide coverage for punitive or exemplary damages unless specifically included."  The Applicable Policies do not have a provision specifically including punitive or exemplary damages.  In fact, the Nautilus CSOF, to which 3 Builders has admitted, see supra Discussion section I., states that the Policies "include *PUNITIVE OR EXEMPLARY DAMAGES* exclusion endorsement form L217 (06/07) which excludes coverage for punitive or exemplary damages."  [Nautilus CSOF at ¶ 23 (citing Reyes Decl., Exh. 6 (Form L217 (06/07), excerpted from First Amended Complaint, Exhs. D-F)).]

This Court therefore GRANTS the Motion as to both the First Amended Complaint and the First Amended Counterclaim on the issue of coverage for the claims for punitive damages in the Underlying Proceedings.

**V.   Whether There is a Covered Occurrence**

As in Evanston, the central dispute in this case is whether the damages that Pinnacle seeks in the Underlying

31

Proceedings were caused by an occurrence within the meaning of the Applicable Policies.  Haw. Rev. Stat. § 431:1-217(a) states:

> For purposes of a liability insurance policy that covers occurrences of damage or injury during the policy period and that insures a construction professional for liability arising from construction-related work, the meaning of the term "occurrence" shall be construed in accordance with the law as it existed at the time that the insurance policy was issued.

Policy number NC54585 was effective from January 24, 2008 to January 24, 2009, and Policy number NC861241 was effective from January 24, 2009 to January 24, 2010.  [First Amended Complaint, Exh. D (part 1) at 2, Exh. E (part 1) at 2.]  According to the Pinnacle Complaint, Pinnacle entered in to the Construction Contract with 3 Builders on September 17, 2008, and Pinnacle alleges that 3 Builders failed to make material disclosures to Pinnacle in connection with the Construction Contract.  [Pinnacle Complaint at ¶¶ 17, 20-23.]  3 Builders worked on the Project until February 2009, when Pinnacle ordered the Contractors to stop work.  [<u>Id.</u> at ¶ 33.]  Thus, 3 Builders' actions which allegedly gave rise to the claims in the Underlying Proceedings occurred during the periods of both of the Applicable Policies.

Under the facts of this case, this Court concludes that the operative case law is that which existed at the time Nautilus issued Policy number NC54585, which was effective as of January 24, 2008.  Although <u>Evanston</u> was not part of the law in existence at that time, and <u>Evanston</u> interpreted the law that

32

existed in 2002, <u>Evanston</u> also discusses the cases that were part

of the law in existence as of January 24, 2008.  In particular,

<u>Evanston</u> discusses <u>Burlington Insurance Co. v. Oceanic Design &</u>

<u>Construction Inc.</u>, 383 F.3d 940 (9th Cir. 2004).  In <u>Burlington</u>,

the Ninth Circuit stated:

> Though certain allegations in the homeowners'
> counterclaim are couched in terms of negligence,
> it is undisputed that Oceanic had entered into a
> contract to construct a home for the homeowners.
> The counterclaim then alleges that Oceanic
> breached its contractual duty by constructing a
> residence "substantially inferior to the standard
> of care and quality which had been agreed."  Other
> than a breach of that contractual duty, the facts
> in this case do not reflect a breach of an
> independent duty that would otherwise support a
> negligence claim.  In Hawaii, an occurrence
> "cannot be the expected or reasonably foreseeable
> result of the insured's own intentional acts or
> omissions."  <u>Hawaiian Holiday Macadamia Nut [Co.</u>
> <u>v. Indus. Indem. Co.]</u>, 872 P.2d [230,] 234 [(Haw.
> 1994)] (citing <u>AIG Hawaii Ins. Co. [v. Caraang]</u>,
> 851 P.2d [321,] 329 [(Haw. 1993)]).  If Oceanic
> breached its contractual duty by constructing a
> substandard home, then facing a lawsuit for that
> breach is a reasonably foreseeable result.  Our
> reading comports with the rationale underlying a
> CGL policy:
>
>> General liability policies . . . are not
>> designed to provide contractors and
>> developers with coverage against claims their
>> work is inferior or defective.  The risk of
>> replacing and repairing defective materials
>> or poor workmanship has generally been
>> considered a commercial risk which is not
>> passed on to the liability insurer.  Rather
>> liability coverage comes into play when the
>> insured's defective materials or work cause
>> injury to property other than the insured's
>> own work or products.
>
> <u>Anthem Elec., Inc. v. Pac. Employers Ins. Co.</u>, 302

> F.3d 1049, 1057 (9th Cir. 2002).  Allowing
> recovery for disputes between parties in a
> contractual relationship over the quality of work
> performed would convert this CGL policy into a
> professional liability policy or a performance
> bond.
>
> Likewise, our holding is consistent with the
> line of cases from the District of Hawaii that
> hold that contract and contract-based tort claims
> are not within the scope of CGL policies under
> Hawaii law. . . .

383 F.3d at 948-49 (some alterations in original) (discussing CIM

Ins. Corp. v. Midpac Auto Ctr., Inc., 108 F. Supp. 2d 1092, 1099-

1103 (D. Hawai`i. 2000); WDC Venture v. Hartford Accident &

Indem. Co., 938 F. Supp. 671, 677-79 (D. Hawai`i. 1996)).

In Burlington Insurance Co. v. United Coatings

Manufacturing Co., this district court examined WDC Venture, its

progeny, and Burlington v. Oceanic and concluded that "the

relevant query is whether the **genesis** or **origin** of the underlying

claims, including those sounding in tort, is premised on a

contractual relationship or is based on an independent tort claim

under state law."  518 F. Supp. 2d 1241, 1249-51 (D. Hawai`i

2007) (emphases in original) (footnote omitted).  This district

court ultimately ruled that there was no duty to defend or

indemnify where all of the claims in the underlying proceedings

were dependent upon the existence of the insured's "contracts,

contracts of sale, warranties, or representations; and none of

the claims alleges an independent duty which transcends the

underlying contracts or warranties."  Id. at 1252.

The cases from this district are consistent with the ICA's decision in Group Builders, Inc. v. Admiral Insurance Co., which held that, as a matter of state law, "construction defect claims do not constitute an 'occurrence' under a CGL policy. Accordingly, breach of contract claims based on allegations of shoddy performance are not covered under CGL policies. Additionally, tort-based claims, derivative of these breach of contract claims, are also not covered under CGL policies."  123 Hawai`i 142, 148-49, 231 P.3d 67, 73-74 (Ct. App. 2010). Although Group Builders was not part of the law as it existed in January 2008, this district court has concluded that Group Builders is consistent with the law as it existed during similar time periods.  See, e.g., State Farm Fire & Cas. Co. v. Vogelgesang, 834 F. Supp. 2d 1026, 1037-38 (D. Hawai`i 2011) (concluding that the passage of House Bill No. 924[15] did not affect the outcome of the case because, although Group Builders was decided in 2010, nearly all of the cases it relied upon pre-dated 2006, the year that State Farm issued the first policy at issue); Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc., 870 F. Supp. 2d 1015, 1032 (D. Hawai`i 2012) (interpreting the law as it existed in 2007 and noting that § 431:1-217(a) does not nullify Burlington v. Oceanic or any of the other cases that the ICA

---

[15] House Bill No. 924 became Act 83, and the relevant provision was codified as Haw. Rev. Stat. § 431:1-217(a).

relied upon in <u>Group Builders</u>).

3 Builders urges this Court to find that, at a minimum, Nautilus had a duty to defend 3 Builders because the ICA "recently ruled that an insurer owed a defense simply because at the time the insurer refused to undertake a defense on behalf of its insured, 'the courts were split as to whether construction defect claims constituted an "occurrence" under a CGL policy.'" [Mem. in Opp. at 19 (quoting <u>Group Builders, Inc. v. Admiral Ins. Co.</u>, No. 29729, 2013 WL 1579600, at *10 (Hawai`i Ct. App. Apr. 15, 2013) (citing <u>Group Builders</u>, 123 Hawai`i at 148, 231 P.3d at 73 (noting "a split of authority on the issue")))].  Even assuming, <em>arguendo</em>, that <u>Group Builders</u> (2013) stands for the proposition that an insurer owes a duty to defend whenever, at the time of tender, there is a split of authority as to whether construction defect claims constitute occurrences under CGL policies, <u>Group Builders</u> (2013) was not part of the law that existed when Nautilus issued the first of the Applicable Policies in January 2008.  Further, <u>Group Builders</u> (2013) relied on the split of authority that existed at the time Group Builders, Inc. ("Group Builders") tendered its defense to its insurer, Admiral Insurance Co. ("Admiral").  Group Builders first tendered its defense to Admiral in 2003, and Admiral denied coverage on June 11, 2003.  Group Builders' insurer in a policy immediately preceding Admiral's policy, Tradewind Insurance, tendered the

defense to Admiral in late February 2004, and Admiral issued a
denial letter to Group Builders on April 7, 2004, reiterating the
position in the June 11, 2003 denial letter.  <u>Group Builders</u>
(2013), 2013 WL 1579600, at *2.  Even assuming, *arguendo*, that
there was a split of authority in the applicable law at the time
Admiral denied Group Builders' defense,[16] <u>Group Builders</u> (2013)
does not apply in the instant case because the state of the law
in existence when Admiral denied a defense to Group Builders did
not include <u>Burlington v. Oceanic</u>, which the Ninth Circuit
decided on September 8, 2004.  As noted in <u>Nordic PCL</u>, the Ninth
Circuit's construction of Hawai`i insurance law in <u>Burlington v.
Oceanic</u> is the "law of the circuit" and constitutes binding
authority on this Court.  870 F. Supp. 2d at 1030.  Further,
<u>Burlington v. Oceanic</u> is consistent with <u>Group Builders</u>, and "in

---

[16] This Court disagrees with the proposition that <u>Group
Builders</u> recognized a split of authority amongst cases
interpreting Hawai`i insurance law.  The "split of authority"
quote is taken from the following context:

> Plaintiffs highlight precedent from outside
> Hawai`i holding that construction defect claims
> are covered claims under CGL policies.
>
> There is a split of authority on the issue.
> <u>Gen. Sec. Indem. Co. v. Mountain States Mut. Cas.
> Co.</u>, 205 P.3d 529, 534 (Colo. Ct. App. 2009)
> ("There is a split among other jurisdictions
> whether a defective workmanship claim, standing
> alone, is an 'occurrence' under CGL policies.").
> The line of federal cases applying Hawai`i law
> follow the majority position.

<u>Group Builders</u>, 123 Hawai`i at 148, 231 P.3d at 73.

37

the seven and a half years since Burlington [v. Oceanic] was decided, neither the Hawaii Supreme Court nor the ICA has criticized that decision[,]" id. at 1031, nor have those courts criticized Burlington v. Oceanic since the ruling in Nordic PCL.

In light of this history of the interpretation of Hawai`i insurance law, this Court declines to follow Group Builders (2013) and CONCLUDES that the Applicable Policies in the instant case, the first of which was issued in January 2008, fall under the Ninth Circuit's analysis in Burlington v. Oceanic.  See id. at 1032.

After careful review of the claims alleged in both the Underlying Action and the Underlying Arbitration, this Court FINDS that all of the claims are either contract claims or claims that arise from the contract or from the contractual relationship.  In so ruling, this Court rejects 3 Builders' argument that the Underlying Proceedings allege claims for the breach of acceptable industry standards.  This Court concludes that such claims fail to "allege[] an independent duty which transcends the underlying contracts or warranties."  See Burlington v. United Coatings, 518 F. Supp. 2d at 1252.

Pursuant to Hawai`i insurance law as it existed when 3 Builders purchased the first of the Applicable Policies, this Court CONCLUDES that the actions which form the basis of the contract claims and the contract-based claims in the Underlying

Proceedings are not occurrences within the meaning of the Applicable Policies.  Insofar as the claims in the Underlying Proceedings are not within the Applicable Policies' initial grant of coverage, this Court need not reach the issue of whether the various exclusions Nautilus cites in the Motion preclude coverage.  This Court therefore CONCLUDES that Nautilus does not owe 3 Builders a duty to defend or a duty to indemnify 3 Builders against the claims in the Underlying Proceedings.

### CONCLUSION

On the basis of the foregoing, Nautilus's Motion for Summary Judgment, filed November 12, 2012, is HEREBY GRANTED. The Court DIRECTS the Clerk's Office to enter judgment in favor of Nautilus as to both the First Amended Complaint and the First Amended Counterclaim.  After the entry of judgment, Nautilus may file a motion seeking "some or all of the costs expended in having to bring this action."  [First Amended Complaint at pg. 50.]  The magistrate judge will consider the motion in the normal course and issue his findings and recommendation.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 24, 2013.



  /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**NAUTILUS INS. CO. V. 3 BUILDERS, INC.;** CIVIL 11-00303 LEK-RLP;
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT